BILL LOCKYER Attorney General MARJORIE E. COX Deputy Attorney General
THE HONORABLE TONY RACKAUCKAS, DISTRICT ATTORNEY, COUNTY OF ORANGE, has requested an opinion on the following question:
May a county ordinance prohibit the transfer of funds into a county candidate or elective county officer's campaign committee from any other campaign committee controlled by a candidate?
 CONCLUSION
A county ordinance may prohibit the transfer of funds into a county candidate's or elective county officer's campaign committee from any other campaign committee controlled by a candidate but only with respect to transfers from one candidate to another and only in order to avoid "funneling" where a valid contribution limit is in place.
 ANALYSIS
In 1992, the voters of Orange County adopted an ordinance that contained the following campaign finance provision:
 "No funds may be transferred into any County candidate or elective County officer's campaign committee from any other campaign committee controlled by a candidate."
The question presented for resolution is whether this provision is constitutional. We conclude that it is constitutional in limited circumstances.[1]
By use of the indefinite article "a," the county ordinance bans both the transfer of campaign funds from one campaign to a different campaign conducted by the same candidate ("Candidate A") and transfers from Candidate A to any other candidate ("Candidate B"). The former, involving two separate campaigns by Candidate A, is generally referred to as an "intra-candidate" transfer; the latter, involving two different candidates, is normally referred to as an "inter-candidate" transfer. In the landmark case of Buckley v. Valeo (1976) 424 U.S. 1, the United States Supreme Court ruled that any restrictions upon intra-candidate or inter-candidate transfers of campaign funds must be consistent withFirst Amendment freedoms of expression and association. The court stated:
 ". . . [C]ontribution and expenditure limitations operate in an area of the most fundamental First Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order `to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' [Citation.] Although First Amendment protections are not confined to `the exposition of ideas,' [citation], `there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs, . . . of course includ[ing] discussions of candidates. . . .' [Citation.] This no more than reflects our `profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,' [citation]. In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation. As the Court observed in Monitor Patriot Co. v. Roy, 401 U.S. 265, 272 (1971), `it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.'
 "The First Amendment protects political association as well as political expression. The constitutional right of association explicated in NAACP v. Alabama, 357 U.S. 449, 460 (1958), stemmed from the Court's recognition that `[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association.' Subsequent decisions have made clear that the First
and Fourteenth Amendments guarantee "`freedom to associate with others for the common advancement of political beliefs and ideas,'" a freedom that encompasses "`[t]he right to associate with the political party of one's choice.'" [Citations.]" (Id. at pp. 14-15.)
1. Intra-Candidate Transfers by Candidate A
Candidate A has previously run for elective office and has contributions left over from that campaign. May a county ordinance prohibit the leftover campaign funds from being transferred to Candidate A's new campaign for county office? We conclude that it may not.
In Buckley v. Valeo, supra, 424 U.S. 1, the court declared with respect to intra-candidate campaign fund transfer bans, which have the effect of acting as expenditure limitations, that "a primary effect of . . . expenditure limitations is to restrict the quantity of campaign speech by individuals, groups, and candidates. The restrictions, while neutral as to the ideas expressed, limit political expression `at the core of our electoral process and of the First Amendment freedoms.' [Citation.]" (Id. at p. 39.) For this reason, expenditure limitations are subject to strict scrutiny and will be upheld only if they are "narrowly tailored to serve a compelling state interest." (Austin v. Michigan Chamber of Commerce (1990) 494 U.S. 652, 657.)
In Service Emp. Intern. v. Fair Political Prac. Com'n (9th Cir. 1992)955 F.2d 1312, certiorari denied (1992) 505 U.S. 1230, the Ninth Circuit ruled that a prohibition against intra-candidate transfers of campaign funds was unconstitutional, stating:
 "We agree with the district court that the ban on intra-candidate transfers operates as an expenditure limitation because it limits the purposes for which money raised by a candidate may be spent. Expenditure limitations are subject to strict scrutiny and will be upheld only if they are `narrowly tailored to serve a compelling state interest.' [Citation.]
 "Appellant FPPC asserts that the ban is justified by the government's interest in preventing funds from being raised for one office and spent for another. Even if we were to recognize this to be a compelling state interest, we would invalidate the ban as violative of the First Amendment because it is not narrowly-tailored. We agree with the district court that this interest in ensuring that contributors are not misled could be served simply by requiring candidates to inform contributors that their contributions might be spent on other races. [Citation.] Concerns about the unintended use of contributors' money can be met `by means far more narrowly tailored and less burdensome than [a] restriction on direct expenditures: simply requiring that contributors be informed that their money may be used for such a purpose.' [Citation]. We hold, therefore, that the intra-candidate transfer ban fails the narrowly-tailored prong of the strict scrutiny test." (Id. at p. 1322, fns. omitted.)
In Shrink Missouri Government PAC v. Maupin (8th Cir. 1995) 71 F.3d 1422, certiorari denied (1996) 518 U.S. 1033, it was argued that the effect of an intra-candidate transfer ban was to increase speech, because if a candidate is prohibited from transferring unspent campaign funds to a later campaign, he or she would use all the available funds to promote the current campaign. (Id. at pp. 1427-1428.) The Eight Circuit rejected the argument, noting that the provision in effect served to "limit the quantity of a candidate's speech in future elections" and that "`the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all.' [Citation.]" (Id. at p. 1428.)[2]
Following the decisions of the Ninth Circuit and Eight Circuit, we conclude that the intra-candidate transfer prohibition of the county ordinance in question is unconstitutional as a violation of theFirst Amendment of the United States Constitution. It unduly limits the freedom of expression of candidates in a manner that is too broad in application.
2. Inter-Candidate Transfers from Candidate A to Candidate B
Candidate A receives campaign contributions and wishes to transfer them to Candidate B's campaign for elective county office. May a county prohibit the contributions from being transferred from Candidate A to Candidate B? We conclude that it may in narrowly drawn circumstances.
While an intra-candidate transfer prohibition would constitute a restriction upon campaign expenditures by Candidate A, an inter-candidate transfer prohibition would constitute a restriction upon campaign contributions by Candidate A and the receipt thereof by Candidate B. A different constitutional analysis is required for inter-candidate transfer prohibitions. "[R]estrictions on contributions require less compelling justification than restrictions on independent spending. [Citations.]" (FEC v. Massachusetts Citizens for Life, Inc. (1986)479 U.S. 238, 259-260; accord, Nixon v. Shrink Missouri Government PAC (2000) 528 U.S. 377, 386-388.)
In Buckley v. Valeo, supra, 424 U.S. 1, the court observed that contributing money to a political campaign is an act of political association that is protected by the First Amendment because it serves to associate the contributor with the candidate as well as with like-minded contributors. It also constitutes political speech because it "serves as a general expression of support for a candidate and his views." (Id. at pp. 21-22.) Inter-candidate transfer prohibitions are unconstitutional unless they are "`closely drawn' to match a `sufficiently important interest.'" (Nixon v. Shrink Missouri Government PAC, supra, 528 U.S. at pp. 387-388.)
In Service Emp. Intern. v. Fair Political Prac. Com'n, supra,955 F.2d 1312, it was argued that an inter-candidate transfer prohibition furthers the government's interest in "preventing corruption or the appearance of corruption by `political power brokers.'" (Id. at p. 1323.) The Ninth Circuit rejected the argument and struck down the prohibition due to its lack of being "closely drawn." The court stated:
 "[T]he ban is not `closely drawn to avoid unnecessary abridgment of associational freedoms.' [Citation.] The potential for corruption stems not from campaign contributions per se but from large campaign contributions. [Citation.] The inter-candidate transfer ban prohibits small contributions from one candidate to another as well as large contributions. We hold, therefore, that the inter-candidate transfer ban is unconstitutional because it fails the `rigorous' test used in Buckley. [Citation.]" (Ibid.)
However, the court recognized that where valid campaign contribution limits are in place, a ban against inter-candidate transfers might be "necessary to prevent contributors from circumventing the contribution limits by funneling contributions through one candidate to another." (Id. at p. 1322.) In the present circumstances, the County of Orange has adopted a $1,000 limit on campaign contributions to county office candidates during an election cycle. We may assume that this contribution limit is constitutional. (See Nixon v. Shrink Missouri Government PAC, supra, 528 U.S. at pp. 385-398; Buckley v. Valeo, supra, 424 U.S. at pp. 23-35.)
We have previously considered inter-candidate transfer bans to prevent funneling involving valid contribution limits.[3] In 78 Ops.Cal.Atty.Gen. 266 (1995), we stated that where a county has in effect a valid campaign contribution limit, "we believe that [such a ban] would meet [Buckley's] test for appropriately addressing" the problem of funneling. (Id. at p. 273.) In State v. Alaska Civil Liberties Union, supra, 978 P.2d 597, the court upheld a ban upon inter-candidate transfers to avoid funneling where the contribution limit was found to be valid. (Id. at pp. 632-633.)
While the issue is not free from doubt, we conclude, consistent with our 1995 opinion and recent case law, that a county ordinance may prohibit the transfer of funds into a county candidate or elective county officer's campaign committee from any other campaign committee controlled by a candidate but only with respect to transfers from one candidate to another and only in order to avoid funneling where a valid contribution limit is in place.
[1] The receipt, reporting, and use of campaign contributions are generally regulated in California by the Political Reform Act of 1974 (Gov. Code, §§ 81000-91014), which preempts ordinances that contradict, or would prevent a person from complying with, its express provisions. (See Gov. Code, §§ 81013, 85703.) It has not been suggested that the county ordinance at issue would be preempted by the state act's provisions. (See Gov. Code, §§85300-85320, 85501, 89510-89522.)
[2] Whether an intra-candidate transfer ban may prohibit such transfers above a specified limit presents a different question (see State v. Alaska Civil Liberties Union (Alaska 1999) 978 P.2d 597, cert. den. (2000) 528 U.S. 1153), as does whether a code of judicial conduct may contain an intra-candidate transfer prohibition (see Suster v. Marshall (6th Cir. 1998) 149 F.3d 523, cert. den. (1999)525 U.S. 1114).
[3] Of course, if a contribution limit is invalid, the "funneling" rationale would be unavailable. (See Service Emp. Intern. v. Fair Political Prac. Com'n, supra, 955 F.2d at p. 1322; cf. Shrink Missouri Government PAC v. Maupin, supra, 71 F.3d at p. 1428.)